THE STATE OF OHIO, APPELLANT, *v.* HOLMES, APPELLEE.

(No. C-840644 — Decided June 26, 1985.)

*Arthur M. Ney, Jr.,* prosecuting attorney, *Paul R. Markgraf* and *Judith A. Mullen,* for appellant.

*Eli Namanworth,* for appellee.

SHANNON, P.J. In this appeal, the state of Ohio has invoked our jurisdiction pursuant to Crim. R. 12(J) for the purpose of contesting an order of the court of common pleas that suppressed evidence material to the charges lodged in a prosecution for trafficking in drugs and drug abuse. The primary issue posed by the only assignment of error

given to us for review is whether police officers had an appropriate constitutional justification for seizing the Schedule II controlled substance known as oxycodone without a warrant after they had stopped an automobile that contained two suspects who had earlier been seen smoking what appeared to be a marijuana cigarette. The judge presiding in the court below held that the evidence bore an unconstitutional taint because it was the product of an unlawful misdemeanor arrest, and for the following reasons, we conclude that his decision must be reversed.

On May 29, 1984, a Cincinnati police officer assigned to the vice squad was conducting an undercover surveillance in an area of the city well known as a site routinely used for illicit dealings in drugs. As the officer stood alone near a street corner, his attention was drawn to a sequence of events involving two individuals later identified as the defendant-appellant, Pete J. Holmes, Jr., and one Ronald Harris. Harris was seen initially seated behind the steering wheel of a Buick Skylark and Holmes was standing several feet away from the vehicle engaged in conversation with a third individual who was unknown to the officer.

While the conversation progressed on the sidewalk, Harris reached into his pocket and removed a small manila envelope of the type commonly used as a repository for drugs. From his vantage point some twenty-five feet away, the officer was then able to observe Harris extract a greenish-brown leafy substance from the envelope and use it to roll what the officer's training and experience told him was a handmade marijuana cigarette. After lighting the cigarette and taking "a couple hits off of it," he handed it to Holmes, who had, at that point, joined Harris in the vehicle. The officer was further able to see Holmes smoke the cigarette before the vehicle pulled away from the curb and

headed in a direction that was to take it into the path of two other officers who were participating in the surveillance.

As Harris and Holmes drove away in the vehicle, the officer who had seen them with the cigarette radioed his brother officers, who were then patrolling the area in an unmarked police cruiser. The information conveyed in the course of the transmission consisted of a general description of two black males seen smoking marijuana in a green Buick Skylark that was proceeding in a given direction toward a potential point of interception. It was also said to the officers on patrol that they "might want to stop [the vehicle] and investigate it."

Shortly after receiving the broadcast, Officers Gene Hamann and Paul Klusmeier saw the described vehicle leaving the area where the first officer was stationed. When the car came to a stop at a traffic light, the officers approached it from the rear with their service revolvers drawn, shouted, "Freeze, police," and took steps to remove Harris and Holmes from the passenger compartment. Because it appeared to Officer Klusmeier that Holmes had disposed of something on the floor of the vehicle, his partner, Hamann, walked over to the passenger side and opened the door. It was then that the officers discovered in a bag somewhere near the front seat the controlled substance that Holmes sought to suppress in the court below.

After taking possession of the evidence found in the vehicle, the officers issued a citation for the minor-misdemeanor offense of drug abuse to Harris and permitted him to leave the scene without further detention. The consequences for Holmes, however, were not nearly as favorable. Deciding that the controlled substance in the bag belonged to him, the officers informed him that he was under arrest, placed him in handcuffs and had him taken to a district station house for booking on

felony charges. He was later released from confinement pending the trial of the two charges against him, but only after posting bail in the amount of $1,000.

When called upon to issue a ruling on Holmes's motion to suppress the evidence, the judge presiding in the court below found from the testimony adduced by the parties that Holmes had been arrested for a misdemeanor offense at the time the officers removed him from the vehicle driven by Harris. Finding further that the offense providing the justification for the arrest (the smoking of the marijuana cigarette) had taken place outside the presence of the arresting officers, he invoked the rule in Ohio that generally prohibits warrantless arrests for misdemeanors not observed by law enforcement authorities, and concluded, "I am satisfied that the officers had no authority to arrest [Holmes]. Everything else flowed from that arrest and, therefore, the evidence should be suppressed."

A preliminary issue brought to our attention by the prosecution in its only assignment of error is one that was not addressed specifically by the trial judge in his ruling at the suppression hearing. It concerns the standing of Holmes under the Fourth Amendment to seek the exclusion of the evidence seized by the police officers. Relying primarily upon *Rakas* v. *Illinois* (1978), 439 U.S. 128, and two of its progeny, *United States* v. *Salvucci* (1980), 448 U.S. 83, and *Rawlings* v. *Kentucky* (1980), 448 U.S. 98, the prosecution reasons that Holmes lacked the necessary personal interest to assert a constitutional violation because the evidence adduced below demonstrated that he had no reasonable expectation of privacy in the automobile where the evidence was actually found.

We find the argument in this respect unpersuasive for two reasons. In the first place, the record demonstrates that the prosecutor assigned to the case in the court below failed to raise the question of standing when he otherwise had an ample opportunity to do so in advance of the judge's ruling on Holmes's motion. Whether the omission was intentional or accidental, it may now be said that the alleged error has not been preserved for review on appeal under the doctrine of waiver set forth in *State* v. *Williams* (1977), 51 Ohio St. 2d 112 [5 O.O.3d 98].

Even if we were to decide not to hold the prosecution to the effect of its waiver, we would not accept its argument on the merits. As we see it, it was unnecessary for Holmes to demonstrate a reasonable expectation of privacy in the vehicle from which he was removed because his theory for excluding the evidence ultimately seized by the police officers did not turn upon his Fourth Amendment right to be free from an unreasonable search of the car itself. The dispute centered instead upon the separate right to be free from an arrest or detention of the person unsupported by an appropriate constitutional justification. Where, as here, it is alleged that evidence has been seized pursuant to an unlawful detention, and the detention in question is of the person seeking to exclude the evidence, that individual has the necessary personal interest to assert a constitutional violation under the Fourth Amendment, and that interest is fully consistent with the general constitutional principle recognizing that only defendants whose Fourth Amendment rights have been violated have standing to invoke the protections afforded by the exclusionary rule. *United States* v. *Salvucci, supra,* at 87; *Rakas* v. *Illinois, supra,* at 134.

Turning now to the issue of greatest significance in this appeal, we come to the prosecution's assertion that the police officers who ultimately detained Holmes on the street in response to a brother officer's radio broadcast had an appropriate constitutional justification

for stopping the car in which he was riding, removing him from the passenger compartment, and seizing the evidence discovered in an area near the front seat. Although we have been given several propositions to consider in connection with this point, we find it most appropriate to start with an assessment of two rules of law that address a police officer's authority to make a warrantless arrest in Ohio for a misdemeanor offense. The first, which formed the basis of the trial judge's ruling below and is implicit in the terms of R.C. 2935.03, prohibits, subject to certain exceptions, a warrantless arrest for a misdemeanor committed out of the presence of the arresting officer; and the second, which may be found explicitly in R.C. 2935.26, generally requires the issuance of a citation, rather than a custodial arrest, in a case where the offense at issue is a minor misdemeanor. Compare *State* v. *Darrah* (1980), 64 Ohio St. 2d 22 [18 O.O.3d 193], with *State* v. *Bronaugh* (1984), 16 Ohio App. 3d 237.

A review of the record here leads inescapably to the conclusion that there was competent evidence adduced below to support the judge's findings that Holmes was, in fact, under arrest at the time he was removed from the vehicle on the street, and that the offense providing the basis for the arrest was the smoking of the marijuana cigarette, a minor misdemeanor that had, concededly, not been observed by the arresting officers. If these predicates are unassailable from an evidentiary standpoint, it seems to us that there was, in view of the existing limitations on the authority to arrest for a misdemeanor, a tenable basis for the judge's conclusion that the arrest of Holmes was, in some sense, unlawful.

Having reached this point, we are obliged to note that the authorities to which we have just referred may be used to deem the arrest in the case *sub judice*

unlawful only from the standpoint of state law; to recognize that there may well have been a violation of state law does not, however, compel us to conclude that there was also a deprivation of constitutional magnitude requiring application of the exclusionary rule. As a general rule, conduct of a police officer that violates a provision of state or local law is not, standing alone, a proper basis for excluding evidence on constitutional grounds. *State* v. *Unger* (1981), 67 Ohio St. 2d 65 [21 O.O.3d 41]; *Kettering* v. *Hollen* (1980), 64 Ohio St. 2d 232 [18 O.O.3d 435]; *State* v. *Myers* (1971), 26 Ohio St. 2d 190 [55 O.O.2d 447]; *State* v. *Allen* (1981), 2 Ohio App. 3d 441. Being a matter of constitutional dimension, the appropriate analysis should instead center upon whether it can be said from the relevant facts and circumstances that the detention, search or seizure was unreasonable from the perspective of the Fourth Amendment. See *State* v. *Schwienher* (Jan. 26, 1983), Hamilton App. No. C-820210, unreported.

It is in this respect that the trial judge's assessment of the merits of Holmes's motion to suppress was flawed. Having examined the issues in light of standards rooted in state law, he elected to end the inquiry without reaching the heart of the constitutional question placed before him for resolution. If the analysis had been broadened to the appropriate extent, we are convinced that the judge would have been bound to conclude that there was no constitutional impediment to the prosecution's use of the seized evidence at trial.

In this respect, we begin with a point that appears to be virtually incontrovertible in view of the evidence adduced for the record. If the observations of the officer on foot, who initially viewed Holmes and his companion smoking what was taken under the circumstances to be a marijuana cigarette, are considered in the light of the officer's extensive experience in the investigation of

drug offenses, it is clear to us that there existed probable cause to believe that criminal activity was in progress. See *State* v. *Bronaugh, supra,* at 238-239. For this reason, it cannot fairly be disputed that the officer would have been entitled to detain the suspects for purposes of acting upon the violation committed in his presence had they not driven away from the scene in an automobile.

Because the officer was on foot and did not have access to a vehicle, he had only one practicable alternative as the events developed before him; he used his radio to summon assistance from his brother officers. Where, as here, a police broadcast provides the impetus for a detention, it has been said that the information conveyed over the radio is ordinarily to be regarded as a trustworthy source of information. *State* v. *Fultz* (1968), 13 Ohio St. 2d 79 [42 O.O.2d 259]; *State* v. *Holden* (1985), 23 Ohio App. 3d 5. As in cases involving wanted flyers or bulletins, however, those who rely upon the broadcast do not always have an awareness of all the specific facts underlying the request for assistance. Although it may then be said in a given case that the information conveyed over the radio does not, in itself, establish probable cause for an arrest or reasonable cause for some lesser intrusion, this does not necessarily mean that the recipient must refrain from taking action to avoid the infringement of a Fourth Amendment right. It is now settled that the absence of complete knowledge on the part of those who act in objective reliance upon a broadcast, flyer or bulletin will not serve as a constitutional impediment as long as the officer issuing the information has the requisite knowledge to establish the justification for the arrest or detention. *United States* v. *Hensley* (1985), 469 U.S. 221; *Whiteley* v. *Warden* (1971), 401 U.S. 560; *State* v. *Hill* (1981), 3 Ohio App. 3d 10; *State* v. *Huneke* (Jan. 2,

1985), Hamilton App. No. C-840238, unreported; *State* v. *Jackson* (Jan. 28, 1981), Hamilton App. No. C-800012, unreported.

As we have already noted in this case, the officer who was responsible for the radio broadcast did, from personal knowledge, have probable cause to believe that a criminal offense was taking place as he viewed Holmes and Harris in the vehicle on the street. It follows, then, that when he communicated by radio a description that was sufficient to allow his brother officers to identify the wanted suspects, they had an appropriate constitutional justification for stopping the vehicle on the street and for removing Holmes from the passenger compartment at gunpoint, whether their actions are construed as an investigatory stop, a detention to issue a citation, or a full custodial arrest. See, generally, *United States* v. *Sharpe* (1985), 470 U.S. 675; *United States* v. *Hensley, supra; Dunaway* v. *New York* (1979), 442 U.S. 200. It cannot be said, therefore, that the evidence ultimately seized by the officers should have been suppressed as the product of a detention that was unreasonable within the meaning of the Fourth Amendment. See *New York* v. *Belton* (1981), 453 U.S. 454; *State* v. *Rice* (1982), 69 Ohio St. 2d 422 [23 O.O.3d 374] (police may seize evidence found in automobile within immediate area of defendant after defendant has been stopped for traffic violation). The assignment of error given to us for review is, accordingly, well-taken.

The judgment of the court of common pleas is hereby reversed, and this cause is remanded to that court for further proceedings in accordance with law not inconsistent with this decision.

*Judgment reversed*
*and cause remanded.*

DOAN and HILDEBRANDT, JJ., concur.