[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
The State of Ohio appeals pursuant to Crim.R. 12(J) from the trial court's suppression of crack cocaine discovered incident to the arrest of appellee, Kenon L. Jones. The cocaine evidence was discovered after Jones was arrested for jaywalking. The trial court suppressed the evidence because it found that the arrest was prohibited by R.C. 2935.26. The state has appealed, arguing that freedom from arrest under R.C. 2935.26 is not a constitutional right, and the violation, therefore, did not merit application of the exclusionary rule. We hold, however, that an arrest in violation of R.C. 2935.26 constitutes an unreasonable seizure under the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution. Evidence discovered as a consequence of the violation is subject to the exclusionary rule. Accordingly, we affirm the judgment of the trial court.
 I.
The facts underlying this appeal are set out in the State's brief and are supported by our review of the record.
At approximately 5:25 p.m., Dayton Officers William Swisher and Robert Cleaver were dispatched to the intersection of Walton and Delphos Avenues. The dispatcher provided the officers with a physical description of two young black males believed to be selling drugs at that location. The first male was described as wearing dark shorts, a dark T-shirt, and a baseball cap. The second male, who was later found to be Jones, was wearing blue-jean shorts and a white T-shirt. When the officers arrived at the corner of Walton and Delphos, they saw three or four men, two of whom met the physical descriptions provided by dispatch. The officers pulled up to the men and slowed their cruiser. The men made eye contact with the officers and began to walk away.
The officers stopped the individual in the dark clothes for jaywalking and asked him to sit in the rear of the cruiser. The officers then drove around the block and saw Jones walking in the street. When Jones saw the cruiser, he stepped onto the sidewalk. Officer Swisher exited the cruiser and asked Jones to approach him. When Jones walked to the cruiser, Swisher asked him for some identification, but Jones replied that he had none. Swisher then advised Jones that he had been jaywalking and asked him to put his hands on the cruiser. Jones tightened his legs and buttocks so that Officer Swisher could not conduct a thorough pat down. When Swisher told Jones that he was under arrest for jaywalking pursuant to city policy,[1] Jones pushed away from the cruiser and tried to run. Swisher asked Jones to calm down and warned him that he would be sprayed with pepper mace if he did not stop fighting. Jones continued to struggle, and Officer Cleaver assisted Swisher in handcuffing Jones and putting him into the cruiser. Jones told the officers that he tried to run because he believed there was a warrant out for his arrest.
Jones began moving around in the back seat and continued to do so despite being asked to sit still. The first man was released, and Swisher asked Jones to exit the cruiser in order to try again to conduct a pat down. Jones stepped out but again tightened his muscles so that Swisher could not complete the search. Swisher checked the back seat of the cruiser, but he found nothing. Swisher then asked Jones to be seated in the cruiser despite Swisher's concern for his own safety and the safety of those around him. In the cruiser, Swisher requested Jones's social security number, which Jones provided. The officers then verified on the police computer system that the number provided was indeed that of the defendant.
On the drive to the Safety Building, Jones continued to move around in the back seat, and Officer Swisher heard a noise that he believed was a cellophane wrapper. Swisher pulled the cruiser over and again asked Jones to exit. Swisher unsuccessfully attempted to pat down Jones, and he checked the back seat of the cruiser but found nothing. Swisher asked Jones to sit in the cruiser and remain still for the rest of the short drive to the police station. However, Jones continued to move around for the rest of the ride.
As Jones got out of the back seat at the station, Officer Swisher saw what appeared to be a rock of crack cocaine on the seat where Jones had been sitting. Jones claimed that the cocaine belonged to the first man. The substance tested positive for crack cocaine.
After the defendant was indicted for possession of crack cocaine in violation of R.C. 2925.11(A), he moved to suppress the evidence found after his arrest. In granting the defendant's motion, the trial court determined that the police officers unlawfully arrested Jones for the jaywalking offense. R.C.2935.26 prohibits the arrest of a person who commits a minor misdemeanor, requiring that a citation be issued instead, unless one of the statutory exceptions authorizing arrest exists. One of the listed exceptions occurs when the defendant fails to provide satisfactory evidence of his identity. The trial court found that Section 2935.26 prohibited Jones arrest because jaywalking is a minor misdemeanor and the officers did not provide Jones a reasonable opportunity to provide satisfactory evidence of his identity prior to arresting him. Accordingly the trial court suppressed the crack-cocaine evidence because it was the fruit of an unlawful arrest.
 II.
The State presents a single assignment of error for review. Therein, the state asserts:
 Because the exclusionary rule applies only to Constitutional violations and not to statutory violations, the trial court erred in suppressing evidence in this case.
 With this assignment of error, the State does not argue that the police could have arrested Jones on suspicion of some other charge besides jaywalking. It does not claim that the seizure was something less than a custodial arrest. Nor does the state dispute the trial court's determination that the arrest violated R.C. 2935.26. Instead, the state argues that, even though Jones's arrest occurred in violation of R.C. 2935.26, the evidence discovered consequent to that arrest should not have been suppressed. The argument turns on the distinction between an arrest that is illegal because it violated constitutional protections against unreasonable search and seizure and one that is illegal because it violated some aspect of state law.
The Fourth Amendment of the United States Constitution declares, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Section 14, Article I of the Ohio Constitution, which contains nearly identical language, has been held to extend protections in conformity with those of the federal constitution. State v. Robinette (1997), 80 Ohio St.3d 234, 238,685 N.E.2d 762, 766.
It is axiomatic that an arrest made without a warrant amounts to an unconstitutional seizure under the Fourth Amendment unless the arresting officer has probable cause to believe that an offense has been committed. See Michigan v. Summers (1981),452 U.S. 692, 700, 101 S.Ct. 2587, 2593, 69 L.Ed.2d 340, 348 (The "general rule [is] that every arrest, and every seizure having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause.") Where evidence is discovered as a result of such an illegal arrest it is subject to the exclusionary rule and must be suppressed. State v. Timson (1974),38 Ohio St.2d 122, paragraph two of the syllabus. In the present case, there was no lack of probable cause to believe that an offense was committed. Officer Swisher saw Jones commit jaywalking in violation of the Dayton Revised Code of General Ordinances Section 75.02. Nevertheless, under R.C. 2935.26, the offense was not one that would normally give grounds for arrest.
The statute in question, R.C. 2935.26 provides, in relevant part, as follows:
 (A) Notwithstanding any other provision of the Revised Code, when a law enforcement officer is otherwise authorized to arrest a person for the commission of a minor misdemeanor, the officer shall not arrest the person, but shall issue a citation, unless one of the following applies:
 (1) The offender requires medical care or is unable to provide for his own safety.
 (2) The offender cannot or will not offer satisfactory evidence of his identity.
(3) The offender refuses to sign the citation.
 (4) The offender has previously been issued a citation for the commission of that misdemeanor and has failed to do one of the following:
 (a) Appear at the time and place stated in the citation;
 (b) Comply with division (C) of this section [which provides means of pleading guilty and paying the fine without a court appearance].
 Pursuant to the Dayton Revised Code of General Ordinances, Section 70.99, jaywalking is a minor misdemeanor. As a consequence, R.C. 2935.26
requires that a citation be issued and forbids arrest except when one of the four statutory exceptions apply. As the trial court found, none of the statutory exceptions applied. Thus, Jones's arrest was illegal as a violation of this statute.
As the state has pointed out in its appellate brief, however, not every illegality in connection with an arrest requires the suppression of evidence taken incident to that arrest. InKettering v. Hollen (1980), 64 Ohio St.2d 232, the Ohio Supreme Court stated that "the exclusionary rule will not ordinarily be applied to evidence which is the product of police conduct violative of state law but not violative of constitutional rights." Id. at 235. Hollen involved an arrest for a misdemeanor by a police officer acting extraterritorially, something formerly prohibited under R.C. 2935.03. Id. at 233, 233, n. 1. The Court held that the state-law violation did not rise to the level of a constitutional violation, and therefore the evidence need not be suppressed. Id. at 235. In other cases, the Court has held that the exclusionary rule would not apply when officers failed to advise an OMVI suspect that he could have his own blood-alcohol test performed; Hilliard v. Elfrink, (1996), 77 Ohio St.3d 155, syllabus; State v. Myers (1971), 26 Ohio St.2d 190, 196; where there was a legal failure in the return of a search warrant; Statev. Downs (1977), 51 Ohio St.2d 47, 63-64, death penalty vacated (1978), 438 U.S. 909, 98 S.Ct. 3133, 57 L.Ed.2d 1153; and where fingerprint evidence obtained in violation of a statute, State v.Davis (1978), 56 Ohio St.2d 51.
Although it certainly follows from Hollen and its kindred opinions that a violation of state law alone will not warrant application of the exclusionary rule, it does not follow that violation of a state law by police is never accompanied by concerns of constitutional magnitude that might require exclusion of the "fruit of the poisonous tree." For example, in Wilson v.Arkansas (1995), 514 U.S. 927, 115 S.Ct. 1914, 1918,131 L.Ed.2d 976, the United States Supreme Court held that theFourth Amendment incorporates the common-law rule that authorities "knock and announce" before breaking and entering a private residence. The Court held that failure to knock and announce is one factor that must be considered in evaluating the reasonableness of a search and seizure, and, unless justified by circumstances, it may render the police action constitutionally defective.115 S.Ct. at 1918-19. In Ohio, the "knock and announce rule" is codified at R.C. 2935.12. In cases involving unannounced entry by police officers in violation of R.C. 2935.12, application of a simplistic syllogism holding that any violation of the Revised Code does not rise to a constitutional magnitude would, of course, be wrong. As the Wilson precedent indicates, an arrest performed in violation of the "knock and announce" rule may violate both theFourth Amendment and the Revised Code.
Here, we have an arrest executed in violation of a Revised Code section. Citation to the rule from Kettering v. Hollen — "that the exclusionary rule will not ordinarily be applied to evidence which is the product of police conduct violative of state law but not violative of constitutional rights" — cannot end our inquiry. That rule only begs the question of whether a violation of R.C.2935.26 implicates any Fourth Amendment rights and therefore warrants suppression of evidence found consequent to the violation.
In State v. Slatter (1981), 66 Ohio St.2d 452, 453-54, the Ohio Supreme Court, in an unanimous opinion, affirmed an order suppressing evidence taken incident to an arrest that was unlawful under R.C. 2935.26. The only issue before the court in that case, however, was whether R.C. 2935.26 was an unconstitutional intrusion upon the Supreme Court's rule-making powers in the areas of procedure and practice under Article IV, Section 5(B) of the Ohio Constitution. Id. at 454. The Court found the statute was constitutional because it "create[d] a substantive right of freedom from arrest for one accused of the commission of a minor misdemeanor unless one of the statutory exemptions exists." It is probably instructive that at each stage in Slatter — decided only six months after Hollen — no party doubted that a violation of the recently enacted statute would mandate suppression. Nevertheless, because the issue of whether a violation of R.C. 2935.26
encroaches on Fourth Amendment liberties was not raised inSlatter, we do not find that precedent determinative. But seeState v. Loeffler (December 7, 1983), Hamilton App. No. C-830184, unreported (per curiam) (mandating suppression according to the authority of Slatter).
There is a split of authority among Ohio's appellate courts regarding whether evidence found incident to an arrest that violates R.C. 2935.26 is subject to the exclusionary rule. InState v. Holmes (1985), 28 Ohio App.3d 12, the First Appellate District, citing Kettering v. Hollen, held that an arrest made in violation of R.C. 2935.26 was not of constitutional dimension and therefore evidence seized in connection with the arrest should not have been suppressed. Id. at 15-16. Following Holmes, a number of other courts have adopted the same position. State v.Heideman, (June 23, 1988), Ross App. No. 1429, unreported, at 2-3 (Fourth District); State v. Wilkinson (Sept. 30, 1986), Huron App. No. H-85-27, unreported (Sixth District); see also State v.Kasunic (February 7, 1996), Medina App. No. 2499-M, unreported at 3 (Ninth District) (obiter dictum that the exclusionary rule does not apply).
Other Ohio courts have suppressed evidence taken incident to an arrest unlawful under 2935.26, at least implicitly finding a constitutional violation. State v. Richards (Jan. 15, 1993), Washington App. No. 92 CA 06, unreported, at 2 (Fourth District);State v. Polansky (May 19, 1983), Cuyahoga App. No. 45402, unreported, at 1 (Eighth District); see also State v. Peay (1991),62 Ohio Misc.2d 92, 94 (Lucas County Common Pleas Court suppressed evidence taken in an arrest illegal under R.C. 2935.26.). Indeed, the First District has itself not been entirely true to the rule it announced in Holmes. See, e.g., State v. Robinson (1995),103 Ohio App.3d 490, 496 (mandating suppression); State v. Ballew
(Dec. 26, 1997), Hamilton App. No. C-970080, unreported; see alsoState v. Stoken (Jan. 25, 1989), Hamilton App. Nos. C-880006, C-880007 (in obiter dictum, noting that a search incident to a lawful arrest could not follow a violation of R.C. 2935.26).
This court's pronouncements on this topic have also, unfortunately, not been entirely consistent. Compare State v.Satterwhite (1997), 123 Ohio App.3d 322, and State v. Terry (Feb. 28, 1997), Montgomery App. No. 15796, unreported, at 12, and Statev. Hudson (Jan. 17, 1997), Montgomery App. No. 15757, unreported, at 7-8, and State v. DiGiorgio (Dec. 27, 1996), Montgomery App. No. 15861, unreported, and State v. Darner (Nov. 10, 1988), Darke App. No. 1210, unreported, at 2 (all cases requiring suppression in connection with a violation of R.C. 2935.26), with State v.Rivers (Jan. 13, 1992), Montgomery App. No. 2745, unreported, at 5-6 (approving Holmes) and State v. Phinizee (Jan. 4, 1990), Clark App. No. 2603, unreported, at 2 (both cases permitting evidence because violation of R.C. 2935.26 was not unconstitutional); see also State v. Lowe (June 19, 1998), Montgomery App. No. 16854, unreported, at 8-9 (dictum stating violation of "citation only" rule of R.C. 2935.26(A) would not offend the constitution.). The time has come to resolve this division authority within our own district.
Accordingly, we will assess whether an arrest for a minor misdemeanor that violates R.C. 2935.26 has a constitutional dimension that warrants application of the exclusionary rule. Doing so we hope to avoid the oversimplification that has created inconsistent results in the past. We fully recognize that an arrest executed in violation of state law is not necessarily a constitutional violation warranting the suppression of evidence.Hollen, 64 Ohio St. at 25. On the other hand, the fact that restrictions on arrest powers derive from the Revised Code does not mean that they are inherently unrelated to liberties that are protected under the Fourth Amendment.
 III. A.
Most legal analysis of the constitutionality of arrest for petty crimes has arisen in connection with the doctrine that permits warrantless searches incident to a lawful arrest. The circumstances of the instant case are somewhat peculiar in the fact that the evidence was not discovered through a search, yet it still appeared as one of the fruits of the arrest. Nevertheless, the circumstances of the case are sufficiently similar to such a search to merit a review of these cases. Moreover, because most of the authorities indicating that there are constitutional limitations on the power of arrest consider suppression of evidence obtained through a search incident to an arrest, we find it worthwhile to review that doctrine.
The United States Supreme Court has long recognized that agents of government may conduct a warrantless search of the person of one who has been lawfully arrested without violating the constitutional protections against unreasonable search and seizure. See, e.g., Weeks v. United States (1914), 232 U.S. 383,392, 34 S.Ct. 341, 344, 58 L.Ed. 652; Agnello v. United States
(1925), 269 U.S. 20, 30, 46 S.Ct. 4, 5, 70 L.Ed. 145. Although there is not a great deal of early authority treating the subject, it seems relatively clear that the search incident to arrest, in some form or another, was recognized under early common law. SeeUnited States v. Robinson (1973), 414 U.S. 218, 230-31, 233
n. 3, 94 S.Ct. 467, 474-75, 476, n. 3, 38 L.Ed.2d 427 (reviewing the historical precedent). Moreover, it appears from as far back as can be discerned that such a search has never been considered a violation of the accused's personal liberties in the United States. Id. at 231-33. The primary justification for the reasonableness of a search incident to an arrest rests on the need to discover and preserve evidence and the need to disarm the suspect before taking him into custody. See Chimel v. California
(1969), 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685.
In United States v. Robinson, the Court considered a case in which the defendant had been arrested and searched following a traffic offense, driving after his license had been revoked.414 U.S. at 470. The Court of Appeals for the District of Columbia had held that because the offense was minor, neither of the primary justifications for a search existed. Robinson (D.C. Cir. 1972), 471 F.2d 1082, 1094. The Supreme Court reversed, holding that the ability of a police officer to conduct a search incident to an arrest did not hinge on a case-by-case determination of whether justification for a search existed at the time of arrest.Id. at 235. Instead, the Court held, the scope of authority of a police officer in conducting a search incident to a lawful arrest is "unqualified." Id. at 230.
In Gustafson v. Florida (1973), 414 U.S. 260, 94 S.Ct. 488,38 L.Ed.2d 256, the companion case to Robinson released on the same day, the Court put to rest any question of whether the power to search incident to arrest existed even for minor offenses that did not require arrest and could, instead, result in a citation. Gustafson was arrested in Florida for driving without a license in his possession, a charge that usually would not result in formal arrest. Id. at 262, 265, n. 3. The Court stated, "It is sufficient that the officer had probable cause to arrest the petitioner and that he lawfully effectuated the arrest, and placed the petitioner in custody." 414 U.S. at 265.
The Court in Robinson expressly noted that the defendant had been lawfully arrested for an offense in the District of Columbia.414 U.S. at 221 n. 1. Thus, the Court left for another day cases that might arise on different facts. Id. In the instant case, we are presented with a number of distinguishing facts, the most important of which is that Jones's arrest violated R.C. 2935.26
and was, in that sense, unlawful. The legality of the arrests inRobinson and Gustafson, in contrast, was never at issue. SeeRobinson, 441 U.S. at 221 n. 1; Gustafson, 414 U.S. at 262.
Justice Stewart, in a concurring opinion in Gustafson, noted that a "persuasive claim might have been made * * * that the custodial arrest of the petitioner for a minor traffic offense violated his rights under the Fourth and Fourteenth Amendments."414 U.S. at 266-67 (Stewart, J., concurring). Nevertheless, Gustafson had conceded the legality of his arrest, and thus the Court never reached that question. Id. A number of legal scholars have joined Justice Stewart in questioning whether the Constitution might limit the scope of a police officer's authority to make a custodial arrest for a petty offense that could otherwise be remedied through a citation. See, e.g., 3 LaFave, Search and Seizure (3 Ed. 1996), 59-64, 91-94, Sections 5.1(h) and 5.2(g); Salken, The General Warrant of the Twentieth Century? AFourth Amendment Solution to Unchecked Discretion to Arrest For Traffic Offenses (1989), 62 Temple L.Rev. 221; Folk, The Case for Constitutional Constraints Upon the Power to Make Full Custody Arrests (1979), 48 U.Cin.L.Rev. 321, 342-43; see also Katz, Ohio Arrest, Search and Seizure (1998) 112, Section 5.02 (discussing the possibility that arrest may be constitutionally unreasonable for minor misdemeanors when the arrestee "satisfactorily identifies himself, is a resident of the community, and has not previously sought to avoid the jurisdiction of the court"). It can be fairly said that the United States Supreme Court has never squarely addressed the question. See 3 LaFave, supra, at 93, Section 5.2(g); Katz, supra, at 112, Section 5.03.
 B.
Under the common law, warrantless arrests for misdemeanors were prohibited unless the offense took place in the presence of the arresting officer and the offense involved a breach of the peace. 3 LaFave, supra, at 13, Section 5.1(b); State v. Lewis
(1893), 50 Ohio St. 179, 184-85. Jones's offense took place in Officer Swisher's presence, but it did not constitute a breach of the peace. Thus, he could not have been arrested under the common law. The common-law limits on arrest most often appeared as a defense in cases where arrestees either fought or killed their captors. See, e.g., John Bad Elk v. United States (1900),177 U.S. 529, 535, 20 S.Ct. 729; 44 L.Ed.2d 874; Lewis, 50 Ohio St. at 180. Generally, however, courts have not given the common-law rule any constitutional force. See 3 LaFave, supra, 21-22, Section 5.1(b);City of Columbus v. Herrell (1969), 18 Ohio App.2d 149, 153 ("We know of no constitutional inhibition against the further modification of the common-law rule by legislative enactment. So long as such a statute contains a requirement of `probable cause,' there is no constitutional requirement that a distinction be made between the power to arrest by a peace officer in misdemeanors as distinguished from felonies."). Nevertheless, it is not illogical to suppose that the common-law rule informed the understanding of what constituted an unreasonable exercise of state power when theFourth and Fourteenth Amendments were enacted. Even if the Constitution's protections against unreasonable seizures do not correspond precisely with the common-law limits on arrest, theFourth and Fourteenth Amendments may still preserve some kernel of a long-standing aversion to arrests under circumstances in which state interests do not justify subjecting the individual to the indignity of a full-scale arrest.
Recent United States Supreme Court opinions point the way toward recognition of some constitutional limit on arrest powers. In Whren v. United States (1996), 517 U.S. 806, 116 S.Ct. 1769,135 L.Ed.2d 89, the Court held that a traffic stop made upon probable cause that a traffic offense was committed did not violate the constitution, even if the stop was a pretext for investigating another offense on less than articulable suspicion.116 S.Ct. at 1773-74. Prior to Whren, many scholars had thought that a rule against pretextual searches and seizures was a potential check on the arbitrariness of police power that allows arrest and a full-scale search for even the most minor offense. See Salken, supra, at 236-42. After Whren, that avenue is no longer open. Pretextual searches are especially troubling when the justification for the search is some trivial infraction. Id.
at 223. The fear of the far-reaching and arbitrary power raised by such searches, however, is much diminished if police power to conduct arrests and concomitant searches does not extend to each and every petty offense. The rule of Whren is probably best understood in such a context. See Maryland v. Wilson (1997),519 U.S. 408, 117 S.Ct. 882, 890, 137 L.Ed.2d 41, 53 (Kennedy, J., dissenting) (expressing concern about the "practical effect of our holding in Whren" when coupled with rules that permit "arbitrary control by the police," in that case, ordering passengers out of a vehicle during a traffic stop without reasonable suspicion).
More recently, the Supreme Court decided the case of Knowlesv. Iowa (1998), ___ U.S. ___, ___ S.Ct. ___, ___ L.Ed.2d ___, 67 U.S.L.W. 4027. In that opinion, the Court held that police could not conduct a Robinson-type search incident to an arrest when police issued a citation to the defendant instead of arresting him. 67 U.S.L.W. at 4028. The Knowles case holds a number of important implications for the question at hand. First, theKnowles opinion effectively contradicts the notion advanced asdicta in Whren that, absent some "extraordinary" intrusion, "probable cause justifies a search and seizure." Whren,116 S.Ct. at 1776-77. The police officer in Knowles had probable cause to know that the defendant had been speeding. 67 U.S.L.W. at 4027. Nevertheless, the Court held that the search of the defendant and his car was not justified. Id. at 4028. Similarly, in the instant case, the appellee asserts that probable cause in connection with a minor offense was insufficient to support his arrest and validate the evidence discovered as a consequence of that arrest.
Second, the result in Knowles turned on the police officer's decision to issue a citation instead of performing an arrest. Because the officer chose to issue a citation, he could not conduct a search incident to an arrest. Id. If, however, theFourth Amendment protections announced in Knowles turn entirely on a police officer's arbitrary and unreviewable decision about how the law will be enforced, they are flimsy protections indeed. According to the position advocated by the state in the case at bar, a police officer could overcome the Knowles rule merely by choosing to effect an arrest (perhaps only for the duration of the search), even where that choice was in direct contravention of state law. The Court in Knowles at least suggests that the decision to arrest in lieu of issuing a citation would need some justification. See id. at 4029 ("[I]f a police officer is not satisfied with the identification furnished by the driver, this may be a basis for arresting him rather than merely issuing a citation.")
 C.
Professor Barbara Salken, in an often-cited article on this topic, argues that a strong case can be made for constitutional limitations on the power to arrest for probable cause without a warrant. The General Warrant of the Twentieth Century? AFourth Amendment Solution to Unchecked Discretion to Arrest For Traffic Offenses (1989), 62 Temple L.Rev. 221. Among her arguments in favor of restraint, Professor Salken asserts that the power to make an arrest for every petty offense is so arbitrary and excessive that it is akin to the general warrant and the Writ of Assistance of colonial times. Id. at 252-258. It is commonly understood that objection to these excessive search powers lay at the very foundation of the Fourth Amendment. Id. at 255-56; see also State v. Kinney (1998), 83 Ohio St.3d 85, 87-88. Salken urges that the Fourth Amendment should prevent custodial arrest except in cases where the state can show a need that justifies the significant intrusion upon the liberty interests of the arrestee. Salken, supra, at 273. In most minor misdemeanor cases, she maintains, such an intrusion is not warranted unless the arrestee cannot provide identification or poses a threat to himself or others, or a threat of resuming criminal activity. Id. at 269-71.
Professor Wayne LaFave in his treatise on theFourth Amendment, like Salken, advocates recognition of constitutional limits on arrest powers. LaFave emphasizes the fact that citation has become a preferred alternative to arrest as a means for enforcing laws against petty offenses. 3 LaFave, supra, at 59-60, Section 5.1(h). In light of this development, he asserts, the state's need to take the offender into custody is generally absent in such cases. Without that need, LaFave argues, courts should view these arrests as unreasonable under the Fourth Amendment because the state lacks sufficient justification for invading the privacy of the individual. Id. at 60-63. LaFave writes,"it is difficult to see how a physical taking of custody can be accepted as an inherently reasonable means for invoking the criminal process even in the instance of petty violations, especially those involving nothing more than non-compliance with municipal ordinances." Id. at 63. As a consequence, LaFave believes, the Constitution requires states to adopt legislation or regulations that limit the use of arrest, and that these regulations be given constitutional weight, including application of the exclusionary rule. Id. at 63-64. In states that do limit the power to arrest, the prevailing view appears to favor suppression when those limits are violated. See 1 LaFave, supra, at 137, Section 1.5(b); see also 3 LaFave, supra, at 60, n. 313, Section 5.1(h).
Both Salken and LaFave extend their arguments in favor of constitutional limits on arrest powers into states that expressly permit arrests for petty offenses. Both authors believe that the Constitution mandates the use of citation in certain cases even where state legislatures have not acted to curb arrest powers. We need not address the merits of these arguments in full. The question before us is somewhat narrower: whether the existence of a state law requiring citation instead of arrest has implications in regard to Fourth Amendment liberties. LaFave's argument suggests that such a statute would have such constitutional weight, and we agree.
 IV. A.
The state has asserted that Jones's arrest in violation of R.C. 2935.26 infringed only on his rights under state law. In reaching this point in our analysis, we have already announced our view that this approach — the one adopted in State v. Holmes
(1985), 28 Ohio App.3d 12 — begs the question of whether a violation of R.C. 2935.26 also entails a violation of constitutional rights. As the above analysis indicates, there is good reason to believe that statutes limiting police arrest powers do have Fourth Amendment implications. The state's approach, however, further begs constitutional questions, in an even more fundamental way. The state has asserted that Officer Swisher could arrest Jones because he had probable cause, but these questions follow: probable cause of what? and probable cause to do what?
Probable cause is a constitutional requisite for a warrantless arrest, and evidence seized incident to an arrest without probable cause must be suppressed. State v. Timson (1974),38 Ohio St.2d 122, paragraphs one and two of the syllabus. Probable cause is said to exist "when the arresting officer has sufficient information from a reasonably trustworthy source to warrant a prudent person in believing that the suspect has committed or was committing the offense." State v. Otte (1996),74 Ohio St.3d 555, 559. Whether a particular action constitutes an "offense," however, is a question of state law. Thus, as the Supreme Court has stated, "Whether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law." Michigan v. DeFillippo (1979), 443 U.S. 31, 36,99 S.Ct. 2627, 2631, 66 L.Ed.2d 343, 348.
Here, the arresting officer had probable cause to know that an "offense" had been committed, as defined by a state legislative authority — in this case, a municipality Nevertheless, it was an offense that the state legislature has declared, under the circumstances, could not result in an arrest. It is not intuitively obvious, or even logical, that a legislative declaration that something qualifies as an "offense" should have more constitutional consequence than a determination that the same action should not result in arrest. We see no reason why the legislative schema should not, as a constitutional matter, be considered in toto. In these matters, the executive arms of the state should have to take the bitter with the sweet.
The Ohio Supreme Court's opinion in State v. Timson (1974),38 Ohio St.2d 122 is instructive on this point. In Timson, the Supreme Court required the suppression of evidence taken in a search incident to an arrest. Id. at 124. The defendant, Timson, was arrested by police officers in connection with a federal bench warrant indicating that he took a complaint from a case file in the federal court, for which act he was ordered to show cause why he should not be held in contempt. Id. at 125-26. The search conducted incident to the arrest discovered that Timson was carrying a concealed weapon. Id. at 123. In reviewing the question of suppression, the Court considered the arrest powers of the police officers under state law, noting that, in the absence of a warrant, the officers could only arrest Timson for a felony.Id. at 126-27. The state argued that Timson had committed a contempt of court. Id. at 128. Even assuming that to be true, the Court held that contempt was a sui generis offense, not a felony. Id. at paragraph three of the syllabus. As a consequence, the officers lacked state-law authority to arrest Timson. Id. at 129. Therefore, the Court held, they lacked probable cause. Id. at 131 Accordingly, the Court concluded that the evidence had to be suppressed. Id.
So, we have asked, of what did the state have probable cause in the instant case? It had probable cause to believe that Jones committed the offense of jaywalking. As in Timson, however, the offense was not one that justified arrest. As in Timson,
therefore, we should find there was no probable cause to arrest the offender. Accordingly, we conclude that, in order for something to constitute an "offense" for the purposes of a probable cause determination, there must exist some legislative determination that the offense and attendant circumstances warrant the exercise of arrest powers. Under R.C. 2935.26, the state lacked the authority to arrest Jones for jaywalking. For that reason, the state lacked probable cause.
The validity of this rule becomes more apparent when we examine it from a different perspective. We have also asked what it was that Jones's jaywalking gave the police probable cause to do. Conventionally, it is said that the commission of an offense gives the police "probable cause to arrest" the offender. See,e.g., Terry v. Ohio (1968), 392 U.S. 1, 25-26, 88 S.Ct. 1868,1882, 20 L.Ed.2d 889, 908; State v. Droste (1998), 83 Ohio St.3d 36,40; State v. Bresson (1990), 51 Ohio St.3d 123, syllabus. How are we to reconcile the notion that police had "probable cause to arrest" Jones with the fact that state law did not treat Jones's infraction as an `arrestable' offense? Again, we must answer that, in light of R.C. 2935.26, the state lacked probable cause.
We think, furthermore, that an arrest, at some level, must be justified by state interest in enforcing the law. The probable cause requirement generally encapsulates that justification. With probable cause, a police officer entertains a prudent belief that the arrestee has broken the law. Thus, the imposition of custodial arrest is justified by the state interest in enforcing that law. With R.C. 2935.26, however, the state legislature has expressly disavowed any interest in using arrest to enforce the laws that govern minor misdemeanor offenses, except under the specific circumstances listed in the statute. Where else but to state law are we to turn for the justification underlying the arrest?
Surely we would not countenance an arrest for some action that is designated an offense in some other state or country, but not in Ohio. That is because the state's interest in arrest lies only in enforcing its own laws. Where the state legislature has, in addition to designating some action a criminal offense, expressed its disinterest in using arrest to prevent and punish that action, the justification for arrest can no longer lie. Attempting to manufacture a rationale for arrest under such circumstances is akin to finding probable cause by reference to the criminal laws of some foreign jurisdiction.
On the other end of the scale from the evanescent state justification for arrest for minor misdemeanors in contravention of statute, we have the Ohioan's interest in his own liberty. Probably too little judicial attention has been granted to the imposition upon personal liberty that attends a custodial arrest. One writer has expressed the difference between citation and arrest in the following terms:
 A person stopped for a summons or citation may be subjected at most to a frisk limited in scope; one placed under custodial arrest may be subjected to a full and detailed search of the person. Once the arrestee is taken to the stationhouse, he may have his personal effects taken away, examined, inventoried and stored. He may be fingerprinted, photographed, placed in an identification lineup and interrogated. The difference in impact on human dignity is instantly obvious if one considers the difference in stigma between receiving a summons and being arrested and taken to jail. The difference in impact on personal liberty is the difference between a brief stop and a long wait in a jail cell until bail is set.
 Folk, The Case for Constitutional Restraints Upon the Power to Make Custodial Arrests (1979), 48 U. Cin.L.Rev. 321, 328. The Ohio Supreme Court has held that R.C. 2935.26 "create[s] a substantive right of freedom from arrest for one accused of the commission of a minor misdemeanor unless one of the statutory exemptions exists." State v. Slatter (1981), 66 Ohio St.2d 452, 458. It is also a substantial right with a profound effect on the liberty interests of the individual. As we have already noted, moreover, the reluctance to sanction arrest for petty crimes lies deeply rooted in the common law.
It must be remembered that a minor misdemeanor, by definition, is an offense that can carry no jail sentence. See R.C. 2901.02(G); Crim.R. 4.1(B). When a police officer arrests an individual, on the other hand, a long wait in a jail cell may follow, and that wait occurs during the stage when the individual is presumed innocent. For more serious crimes, the preliminary period of detention is a justifiable and necessary concession to the practical. For a minor-misdemeanor offender, however, the power of the police officer to arrest him creates a form of potential punishment that exceeds anything that could be meted out by a judge after a finding of guilt. This imbalance of means and ends was, no doubt, taken into account by the legislature when it mandated citation in lieu of arrest for these offenses. The legislature, through R.C. 2935.26, has essentially declared arrest an unreasonable means of enforcing the laws against minor misdemeanors, except when police can show those particular circumstances that justify the use of that means.
Under the Fourth Amendment, a warrantless arrest must be reasonable. With so much on one side of the balance and essentially nothing on the other, the position that an arrest in violation of R.C. 2935.26 is somehow reasonable appears, to us, to be untenable. For this reason, and in accordance with the above analysis, we hold that an arrest, executed in violation of R.C.2935.26, of one who has committed a minor misdemeanor is an unreasonable seizure against the protections of theFourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution.
 B.
At this point, it is probably worthwhile that we should further explain why the present case is distinguishable fromHollen, Elfrink, Myers, Downs, and Davis, cited supra, and other cases holding that violations of state law did not infringe onFourth Amendment guarantees. As an initial matter, most such cases did not involve any question that affected the determination of probable cause to arrest. E.g., Elfrink, 77 Ohio St.3d at 160, and Myers, 26 Ohio St.2d at 196 (failure to follow statutory requirement that DWI suspect be advised of his right to have an independent blood test); Downs, 51 Ohio St.2d at 65 (failure to return a search warrant in violation of Crim.R. 41); Davis,56 Ohio St.2d at 56 (failure to obtain judicial approval for fingerprinting juvenile). It is for a determination of probable cause that we look to state law. Thus, these cases are easily distinguishable.
A slightly more difficult question is posed by our distinguishing Kettering v. Hollen. Hollen involved a state law that forbade arrest under the circumstances in which the defendant was taken into custody. 64 Ohio St.2d at 234. In that case, the logic that finds no probable cause to arrest where it is forbidden under state law might, in some sense, be seen to apply. Such a perspective, however, would misapprehend the logic of probable cause as we have outlined it above. In Hollen, the relevant state law restricted who was able to perform the arrest. In essence, the law at issue in Hollen regulated the manner in which an arrest might be made. R.C. 2935.26, in contrast, proscribes the making of any arrest at all. That proscription is inextricably tied to the legislature's authority to determine what actions constitute offenses and what the consequences of those actions will be. The individual's rights under R.C. 2935.26 are akin to and an extension of the right to be free from arrest when not suspected of having committed a crime.
In Hollen, furthermore, the statutory restrictions at issue did not affect any privacy interest vested in the individual that would be protected under the Fourth Amendment. Although the arresting officer in Hollen was forbidden from arresting the defendant, some other officer with authority at the locus of the arrest could have acted. See Hollen, 64 Ohio St.2d at 235; see also State v. Droste (1998), 83 Ohio St.3d 36, 40 (finding that liquor agent's involvement in law enforcement, although prohibited by statute, was not unconstitutional). The extent of the constitutional intrusion would have been the same in either case. Here, in contrast, the arrest could not have occurred except in violation of state-law. The law-enforcement interest justifying arrest in Hollen remains the same regardless of who effects the arrest. In the case at bar, there was no law-enforcement justification for Jones' arrest. Any interest the state might have had was expressly disavowed in the Revised Code.
It is for these reasons that we conclude the violation of R.C. 2935.26 has a constitutional dimension that was not reached by the state-law violations in Hollen and the other like cases cited above.
 C.
We anticipate that the following argument might be advanced against the logic that we adopt in our judgment today: if the constitution did not require the state to adopt the limits on arrest powers mandated by R.C. 2935.26, than violation of that statute cannot reach the level of a constitutional violation. Such an argument might draw an analogy to the Supreme Court's opinion in United States v. Caceres (1979), 440 U.S. 741,99 S.Ct. 1465, 59 L.Ed.2d 733, in which the Court held that an IRS agent's violation of agency rules on electronic surveillance did not warrant suppression. 440 U.S. at 755. The Court stated that "the IRS was not required by the Constitution to adopt [the] regulations." Id. at 751. Thus, the Court concluded that the violation of the regulations did not raise any constitutional questions. Id. at 752. We reject the argument, however, and the analogy to Caceres.
First, we put aside the arguments of those scholars that hold the Fourth Amendment does mandate limits on the power to arrest for petty crimes. Convincing as those arguments may be, they are not necessary to the question at hand. That point of contention aside, the fundamental distinction between Caceres and the instant case lies in the fact that the regulations at issue in Caceres did not affect the question of probable cause. With probable cause to arrest we must necessarily look for a state-law justification.See DeFillippo, 443 U.S. at 36. The fact that the Constitution does not mandate the adoption of any particular criminal statute does not make that statute any less relevant to the question of probable cause.
For example, the federal Constitution does not mandate that Nevada permit gambling for profit, or that Ohio prohibit it. See R.C. 2915.02. Nevertheless, a police officer in Ohio who arrests a bookmaker necessarily relies on the Revised Code provision outlawing such activities. R.C. 2915.02(A)(1). By the same token, a police officer in Las Vegas cannot arrest a bookmaker on the grounds that similar arrests are permitted in Ohio. The fact that the Constitution sanctions the actions of the Ohio officer does not mean that the same actions performed by a Nevada police officer are constitutional. Any evidence discovered as a consequence of the Nevada officer's actions would still be excluded because of the lack of probable cause.
The restrictions of R.C. 2935.26 have constitutional dimension because they are part and parcel of the criminal-law statutory scheme that governs when a person can be arrested in Ohio. The police power gives the state the ability to proscribe certain activities and determine their consequences. Those consequences might be just tort liability, or a fine, or a jail sentence, and suspicion of engaging in those activities may give cause for arrest or may not. With R.C. 2935.26, the state has repudiated any interest it had in arresting its citizens for minor misdemeanors, absent some additional justification. Thus, when we look to see whether police could take Jones into custody for jaywalking, we see no probable cause. Absent probable cause, the evidence discovered as a consequence of Jones' arrest is subject to the exclusionary rule. Whiteley v. Warden (1971), 401 U.S. 560,568-69, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306.
 V.
For the reasons expressed in the foregoing, we find that the arrest of the appellee for jaywalking, which arrest occurred in violation of R.C. 2935.26, was an unreasonable seizure under theFourth Amendment of the federal constitution and Section 14, Article I of the Ohio Constitution. Consequently, the crack-cocaine evidence discovered as a result of that arrest was subject to the exclusionary rule. Thus, the trial court did not err in suppressing that evidence. Appellant's sole assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
FAIN, J., and YOUNG, J., concur.
Copies mailed to:
Cheryl A. Ross
Arvin S. Miller
Hon. David Sunderland
[1] Officer Swisher testified that city policy required individuals to produce picture identification, such as a driver's license, in order to satisfy the requirements of R.C. 2935.26(A)(2).