The STATE of Ohio, Appellant,

v.

AMBURGY, Appellee.

[Cite as *State v. Amburgy* (1997), 122 Ohio App.3d 277.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

No. CA96–12–133.

Decided Aug. 4, 1997.

*Timothy A. Oliver*, Warren County Prosecuting Attorney, and *Gregory M. Clark*, Assistant Prosecuting Attorney, for appellant.

*John C. Quinn*, for appellee.

KOEHLER, Judge.

Plaintiff-appellant, state of Ohio, appeals a decision of the Warren County Court of Common Pleas to suppress evidence seized as a result of a search of a motor vehicle. We affirm.

On June 8, 1996, Tammy Newton telephoned the police with a complaint that defendant-appellee, Tracy Amburgy, was at her home and that she wanted him to leave. Appellee had previously been staying at Newton's home. Officer Chris Garrison ("Garrison") went to Newton's home, spoke with appellee, and told him to leave. Approximately ten minutes later, Garrison saw appellee walking in the direction of the house. Garrison stopped and told appellee to stay away from the house.

About fifteen minutes later, Newton again called the police, telling them that appellee had returned to her home. By the time Garrison arrived at Newton's home, appellee had left. Garrison asserts that Newton told him that appellee picked up something, she did not see what it was, and that she thought it was drugs. Newton's written statement taken shortly after the incident simply states, "He [appellee] ran in and grabbed something from the foyer area." Newton gave a description of the truck that appellee was in when he left the house to Garrison.

A few minutes later, Garrison and a Sergeant Durré, in two separate police cruisers, saw the truck less than a block from the house. Both officers activated their lights and stopped the truck. Appellee was a passenger in the truck. Garrison asked the driver/owner if the officers could search the truck. The driver gave his consent. During the search, cocaine was found in the area of the passenger's seat. The officers then arrested appellee.

Appellee was indicted for violating R.C. 2925.11(A) (drug abuse) and 2925.14(C)(1) (possession of drug paraphernalia). On December 5, 1996, appellee filed a motion to suppress all physical evidence seized, claiming that the officers did not have probable cause to stop the vehicle. A hearing was held on December 18, 1996 in which Garrison and Newton testified. The trial court

found that "Officer Garrison had no reasonable cause or articulable suspicion that the occupants of the vehicle had engaged in, or were in the process of engaging in, any criminal activity. The stopping of the vehicle and the detention of the occupants were constitutionally impermissible."

The trial court also held that appellee had standing to challenge the search of the truck. The trial court granted appellee's motion to suppress the physical evidence.

In a single assignment of error, appellant contends that the trial court erred in granting the motion to suppress. Appellant argues that (1) the officers had reasonable suspicion that appellee had committed a violation of R.C. 2925.11(A) (drug abuse) or 2911.21 (criminal trespass), and (2) appellee has no standing to challenge the validity of the search of a vehicle in which he was merely a passenger. We address these two issues in the order presented.

I

The Fourth Amendment to the United States Constitution gives people the right "to be secure * * * against unreasonable searches and seizures." The United States Supreme Court has held that a police officer may stop and question a person if there are reasonable grounds to believe that the person is wanted for past criminal conduct, is currently engaged in criminal conduct, or will in the future be involved in a crime. *United States v. Cortez* (1981), 449 U.S. 411, 417, 101. S.Ct. 690, 695, 66 L.Ed.2d 621, 628–629. The standard applied to an investigatory stop is "reasonable suspicion." *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. An appellate court has authority to review *de novo* trial court determinations of reasonable suspicion. *Ornelas v. United States* (1996), 517 U.S. 690, 696–698, 116 S.Ct. 1657, 1662, 134 L.Ed.2d 911, 919–920; *State v. Dodson* (Feb. 10, 1997), Warren App. No. CA96–07–058, unreported, 1997 WL 50147.

Reasonable suspicion is described "simply as 'a particularized and objective basis' for suspecting the person stopped of criminal activity." *Ornelas,* 517 U.S. at 696, 116 S.Ct. at 1661, 134 L.Ed.2d at 918, quoting *United States v. Cortez* (1981), 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621. The court makes an objective assessment of a police officer's actions in light of the facts and circumstances then known to the officer. *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 6, 665 N.E.2d 1091, 1093–1094. Constitutional reasonableness of traffic stops does not depend on the actual motivations of the individual officers involved. *Whren v. United States* (1996), 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89.

Appellant argues that the criminal activities that the officers had reasonable suspicion to believe that appellee committed were drug abuse and criminal trespass. Since there is no bright–line rule to define reasonableness of an investigatory stop, we will examine the stop in objective terms by examining the totality of the circumstances. *Ohio v. Robinette* (1996), 519 U.S. 33, 39–40, 117 S.Ct. 417, 421, 136 L.Ed.2d 347, 354–355.

Appellant argues that the officers had reasonable suspicion that appellee had violated R.C. 2925.11(A) because Newton told Garrison that appellee possessed drugs.[1] Even assuming *arguendo* Garrison's claim that Newton told him that (1) appellee picked up something, (2) she did not see what it was, and (3) she thought it was drugs, this does not support reasonable suspicion. If an investigatory stop occurs because of an informant's tip, reasonable suspicion will be determined by examining the informant's veracity, reliability, and basis of knowledge. *Alabama v. White* (1990), 496 U.S. 325, 328, 110 S.Ct. 2412, 2415, 110 L.Ed.2d 301, 307–308.

According to Garrison, Newton did not claim that she saw appellee pick up drugs, but only that she thought he had picked up drugs. Officer Garrison's testimony does not indicate that Newton saw appellee while he was in her home when she called police the second time. The basis of knowledge of Newton's assertion that appellee had drugs was based upon speculation and not upon personal knowledge. No other facts were presented showing that the officers had a particularized and objective basis for suspecting that appellee possessed drugs. Therefore, we find that the trial court properly concluded that the officers did not have reasonable suspicion that appellee had violated R.C. 2925.11(A).

Appellant also argues that the officers could stop appellee because the officers had reasonable suspicion that appellee violated R.C. 2911.21 (criminal trespass). Criminal trespass is a fourth-degree misdemeanor, and an offender can receive a maximum sentence of thirty days' imprisonment. R.C. 2911.21(D) and 2929.21(B)(4), (C)(4). The alleged criminal trespass did not occur in the officers' presence, and the officers were acting only upon the assertion by Newton that appellee had returned to the home.

An officer may not make a warrantless arrest for a misdemeanor offense unless the offense occurs in the officer's presence. *Hamilton v. Jacobs* (1995), 100 Ohio App.3d 724, 730, 654 N.E.2d 1057, 1061. The Supreme Court of the United States has refused to decide the issue of whether an officer can stop a person to investigate a past misdemeanor not committed in the presence of an

---

1. Newton testified that she never told any officer that appellee possessed drugs.

officer. *United States v. Hensley* (1985), 469 U.S. 221, 229, 105 S.Ct. 675, 680, 83 L.Ed.2d 604, 612–613.

"We need not and do not decide today whether *Terry* stops to investigate all past crimes, however serious, are permitted. It is enough to say that, if police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a *Terry* stop may be made to investigate that suspicion."

■ A court in determining the reasonableness of a stop "balances the nature and quality of the intrusion on personal security against the importance of the governmental interests alleged to justify the intrusion." *Hensley,* 469 U.S. at 228, 105 S.Ct. at 680, 83 L.Ed.2d at 611–612. In *Hensley,* the United States Supreme Court reasoned that in the context of felonies or crimes involving a threat to public safety, the governmental interest outweighs the individual's interest to be free of being stopped. *Id.,* 469 U.S. at 229, 105 S.Ct. at 680, 83 L.Ed.2d at 612–613.

In the present case, the nature and quality of the intrusion was great. The officers stopped the truck in which appellee was riding, and during the stop, appellee was locked in the back of a police cruiser while the officers searched the vehicle. This type of investigatory stop was not justified based upon a fourth-degree misdemeanor trespass committed outside the presence of the officers. The Supreme Court of the United States has extended reasonableness for offenses not committed in an officer's presence only to "felonies or crimes involving public safety." *Hensley,* 469 U.S. at 229, 105 S.Ct. at 680, 83 L.Ed.2d at 612–613. The present case does not fit within those parameters, and we refuse to extend them to include the facts of this case.

## II

■ Appellant relies upon *Rakas v. Illinois* (1978), 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387, and argues that appellee has no standing to contest the validity of the search because appellee was merely a passenger in the vehicle. In *Rakas,* the defendants, who were passengers in an automobile, sought to suppress evidence found in the vehicle by police. The court held that the defendants lacked standing because they did not have a property or possessory interest in the automobile, or an interest in the property seized. *Id.* at 148, 99 S.Ct. at 433, 58 L.Ed.2d at 404. The court reasoned that "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Id.,* 439 U.S. at 133, 99 S.Ct. at 425, 58 L.Ed.2d at 394.

However, " 'the Supreme Court of the United States did not hold that those persons who are "merely passengers" in a motor vehicle will never have standing

to object to an unreasonable search or seizure.' " *State v. Carter* (1985), 28 Ohio App.3d 61, 62, 28 OBR 101, 102–103, 501 N.E.2d 1219, 1220–1221, quoting *State v. McClendon* (Jan. 14, 1985), Fayette App. No. CA84–06–006, unreported, 1985 WL 8146. A passenger has standing to challenge the legality of a traffic stop because the question centers "instead upon the separate right to be free from an arrest or detention of the person unsupported by an appropriate constitutional justification." *State v. Ratcliff* (1994), 95 Ohio App.3d 199, 204, 642 N.E.2d 31, 34; *State v. Holmes* (1985), 28 Ohio App.3d 12, 14, 28 OBR 21, 22–23, 501 N.E.2d 629, 632–633. See, also, *State v. Otte* (1996), 74 Ohio St.3d 555, 559, 660 N.E.2d 711, 717. Therefore, we hold that appellee has standing because the evidence was seized pursuant to an unlawful detention.

After having reviewed the record, we find that the trial court's decision to sustain appellee's motion to dismiss all physical evidence was proper. Appellant's assignment of error is overruled.

*Judgment affirmed.*

WALSH, J., concurs.

POWELL, P.J., dissents.

POWELL, Presiding Judge, dissenting.

I must respectfully dissent. I believe that the officers could make an investigatory stop of the truck based upon *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, for two reasons. First, the officers had reasonable suspicion that appellee had committed criminal trespass. The officers could reasonably rely upon Newton's statement that appellee had returned to the house when considering the events of the day as a whole. The United States Supreme Court did not rule on the legality of a brief detention of an individual to investigate misdemeanors that did not occur in the officer's presence in *United States v. Hensley* (1985), 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604. I believe that when there is greater reliability of the source, there should also be a greater ability for officers to briefly stop individuals to investigate misdemeanors. Just because a crime is classified as a misdemeanor should not also mean that we should limit a police officer's ability to investigate that crime.

Second, the United States Supreme Court in *Hensley* allows police to make a *Terry* stop for "crimes involving a threat to public safety." *Hensley*, 469 U.S. at 229, 105 S.Ct. at 680, 83 L.Ed.2d at 612–613. In the present case, appellee had entered Newton's premises even after being warned twice by police not to return. Newton had told the police that she and appellee had been arguing. Garrison stated that he thought appellee "was going to get her." When considering the

events of the night as a whole, there was a real potential for the crime of domestic violence to occur in the immediate future. Therefore, I would hold that the trial court erred in excluding the evidence, and the decision should be reversed and remanded.