JOURNAL ENTRY AND OPINION
Appellant was found guilty of a violation of R.C. 4511.19
following a jury trial. Appellant appeals the trial court's denial of his motion to suppress and motion in limine and its admission of certain testimony that appellant alleges was hearsay. Appellant also contends the jury's decision was against the manifest weight of the evidence and that the trial court erred when it permitted evidence of his prior convictions. For the reasons that follow, we affirm.
Appellant Richard Bostwick was indicted in the Cuyahoga County Court of Common Pleas on May 11, 1998 on a charge of Driving Under the Influence, in violation of R.C. 4511.19. Prior to trial, appellant filed a motion to suppress the evidence on the grounds that his arrest was improper. He also filed a motion in limine
seeking to prohibit the admission of evidence regarding prior convictions.
The trial court denied appellant's motion to suppress following a hearing. Appellant's motion in limine was also denied. A jury trial commenced on July 29, 1998.
Strongsville Police Officer John Thomas Janowski, at about 8:00 a.m. on January 17, 1998, was dispatched to the scene of an accident on Interstate 71, just south of State Route 82. Upon arriving, he observed a heavily damaged blue, two-door Chrysler Laser. Based on his observations of the scene, the officer believed that the accident had occurred recently. No individual was present at or near the damaged vehicle.
Another officer soon arrived, and the two officers determined that the vehicle struck a guardrail, head-first, without braking. There was no other damage to the vehicle that would have caused it to turn off of the road prior to the accident. The officers observed what appeared to be blood on the driver's seat and on the driver's side door and door frame as well as two unopened beer bottles in the back of the automobile and a "Backwood's cigar"[1] on the driver's seat.
Officer Larry Pitschmann, a Strongsville Police Officer, had also learned about the accident and had received a description of the driver as a white male wearing a leather jacket with a blue bandana on his head. Officer Pitschmann had a radio scanner in his vehicle and was able to hear the Middleburg Heights dispatcher directing a police officer to the Sunoco gas station in question. The dispatcher stated that a highly intoxicated white male wearing a blue bandana and a leather jacket was at the station claiming he had just been robbed in Strongsville. Officer Pitschmann and a second officer proceeded to the gas station.
Officer Pitschmann observed that appellant matched the description he had heard. Appellant was also bleeding from the left side of his face, had red and glassy eyes, a strong odor of alcohol about him and was trembling, slurring his words and had difficulty standing. When the officer asked appellant whether he had been involved in the accident on I-71, appellant responded that he had been involved in a robbery in a motel on Pearl Road but was unable to provide any specifics regarding the alleged robbery.
Based on the information he had received and his own observations, Officer Pitschmann believed appellant had been the driver of the damaged vehicle. He performed a horizontal gaze nystagmus (HGN) test on appellant; appellant's score indicated a high probability of impairment. The officer declined to conduct any further tests because he was concerned about the gash on appellant's head.
Officer Pitschmann placed appellant under arrest and transported appellant to the police station. A search of appellant uncovered a set of keys that had blood on the tag and some "Backwood's cigars." Appellant refused a breath test, refused to sign a waiver of his Miranda rights, and requested an attorney.[2]
At the police station, appellant had difficulty communicating with the officers, often putting his head down on his arms and acknowledging he was not "positive" of either his address or his phone number. He was later taken to Southwest General Hospital for treatment.
Kathleen Diansika owned the blue Chrysler Laser in question, which she allowed appellant to borrow on January 16 or 17, 1998. Ms. Diansika identified her keys as those that appellant had been carrying. The keys fit the ignition of Ms. Diansika's automobile. When Ms. Diansika loaned the vehicle to appellant, it was not "smashed up" and there had been no beer bottles in the back seat.
Following the conclusion of the evidence, the jury returned a verdict of guilty of Driving Under the Influence. Since appellant had previously been convicted of same on three occasions in the six years preceding January 17, 1998, the level of the offense was raised to a felony of the fourth degree. R.C. 4511.19(A)(4)(a). Appellant was thereafter sentenced to three years of community control and ordered to serve thirty days in the Cuyahoga County Jail and thirty days in a half-way house or other alternative facility. Appellant's driver's license was also suspended for a period of five years.
Appellant timely appealed his conviction.
Appellant's first assignment of error states:
 IT WAS ERROR FOR THE TRIAL COURT TO HAVE DENIED DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE WHERE THE POLICE MADE AN ARREST WITHOUT OBTAINING A WARRANT TO DO SO.
Appellant first contends that his arrest, made without a warrant, was improper.
As a general rule, an officer may not make a warrantless arrest for a misdemeanor offense unless the offense occurs in the officer's presence. State v. Amburgy (1997), 122 Ohio App.3d 277,281, citing Hamilton v. Jacobs (1995), 100 Ohio App.3d 724, 730; see, also, State v. Lewis (1893), 50 Ohio St. 179. However, an exception to this general rule has been established where the officer has probable cause to believe that the suspect was operating a motor vehicle while under the influence of alcohol or drugs. State v. Henderson (1990), 51 Ohio St.3d 54, 56 citingOregon v. Szakovits (1972), 32 Ohio St.2d 271.
In deciding whether probable cause existed to support an officer's arrest of an individual for a violation of R.C. 4511.19, the court must determine "whether, at the moment of the arrest, the officer had knowledge from a reasonably trustworthy source of facts and circumstances sufficient to cause a prudent person to believe that the suspect was driving while under the influence of alcohol."State v. Medcalf (1996), 111 Ohio App.3d 142, 147 citing Beck v.Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142,146; State v. Timson (1974), 38 Ohio St.2d 122, at paragraph one of the syllabus.
Appellant maintains that there was no direct evidence linking him to the automobile that had been involved in the accident; at the time of his arrest, he was discovered neither near the automobile nor near the site of the accident. Furthermore, appellant contends that Officer Pitschmann arrested him outside of the officer's jurisdiction.
When reviewing the trial court's ruling on appellant's motion to suppress, this court must review the record, accepting the trial court's findings of fact as true so long as they are supported by competent, credible evidence, and determine independently whether, as a matter of law, the trial court erred in applying the substantive law to the facts of the case. State v. Gordon (1994), 95 Ohio App.3d 334,336. The record reveals that at the time of appellant's arrest, Officer Pitschmann had been informed by the officers at the scene of the accident that the driver of the vehicle would likely have an injury to the left side of his head; he observed a gash on the left side of appellant's head. Appellant was at a gas station located just off the exit ramp from I-71 in the vicinity of the accident. Appellant smelled strongly of alcohol, his eyes were red and glassy, he was stumbling, and his response to the HGN test indicated that he was highly impaired.
Although appellant claimed to have been the victim of a robbery, he was unable to furnish any details regarding the alleged incident to Officer Pitschmann. Moreover, Officer Pitschmann had also been informed that witnesses had described the individual who had been involved in the accident as a male wearing jeans and a bandana around his head, matching appellant's appearance.[3]
Although Officer Pitschmann admitted that a head injury may cause similar results on the HGN test and appellant was not found at the scene of the accident, there is certainly sufficient competent, credible evidence to support the trial court's finding that appellant's impairment was due to alcohol and that he was operating the automobile while he was so impaired.
The specific facts and circumstances of this case demonstrate ample probable cause to support appellant's arrest. It is important to note that "[t]he exclusionary rule is ordinarily inapplicable to evidence which is the product of police conduct violative of state law, but not violative of constitutional law." Stow v.Riggenbach (1994), 97 Ohio App.3d 661, 663, citing Kettering v.Hollen (1980), 64 Ohio St.2d 232, See, also, State v. Filler
(1995), 106 Ohio App.3d 731, 733; City of Cleveland v. Carrie
(Sept. 19, 1996), Cuyahoga App. No. 69054, unreported.
Lastly, appellant claims that his arrest is improper because it occurred outside of the arresting officer's jurisdiction. R.C.2935.03(E)(3) provides that a police officer may detain any person found violating any provision in Chapter 4511 on a street or highway that is located immediately adjacent to the boundaries of the municipal corporation which employs the officer.
Moreover, even assuming, arguendo, that Officer Pitschmann was found to have been in violation of the statutory restrictions on his authority to arrest, as noted above, police conduct must ordinarily arise to the level of a constitutional violation to invoke the exclusionary rule. Kettering at 235; Stow at 663. A violation of the statute governing extraterritorial arrest does not rise to the level of a constitutional violation. Riggenbach,supra.[4]
The trial court overruled appellant's motion to suppress. Our review of the record indicates there is sufficient competent and credible evidence to support the trial court's findings. Moreover, the trial court did not err in its application of the law.
Appellant's first assignment of error is overruled. The trial court's denial of his motion to suppress is affirmed.
Appellant's second assignment of error states:
 IT WAS ERROR FOR THE TRIAL COURT TO HAVE ALLOWED INADMISSIBLE HEARSAY EVIDENCE TO BE PRESENTED TO THE JURY WHICH EVIDENCE WAS HIGHLY PREJUDICIAL TO DEFENDANT-APPELLANT.
Appellant next maintains that the trial court erred when it permitted testimony that included hearsay statements.
Hearsay is defined in Evid.R. 801(C) as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."
Appellant's first two examples of alleged hearsay are found in the testimony of Officer Janowski. He testified that he had heard a description of the driver of the automobile over his radio that said the officers were to search for an individual in a black, possibly leather, jacket wearing a blue bandana. Prior to this statement at trial, and after appellant's objection, the judge cautioned the jury:
 Ladies and gentlemen, the objection is overruled. The evidence is admitted for the limited purpose not to prove that, in fact, that was the description, but for the limited purpose to establish that that was the information that was given to this police officer. You follow me? You all understand this? All right. You may answer.
Appellant maintains the cautionary instruction was insufficient to overcome the prejudice to appellant. He contends the information was used to link with Officer Pitschmann's subsequent description of what the suspect was actually wearing.
Officer Janowski also testified that, over the radio, he had heard that somebody had picked up an individual in the area where the accident occurred and dropped them off at the Shell station at Pearl Road, at the exit ramp of I-71.[5] Prior to this testimony, the trial judge stated:
 All right, ladies and gentlemen, again for the same reason the Court is going to permit the witness to answer. And this evidence is admitted not to prove the truth of the information but to identify the information that was submitted to this officer. You may answer.
Appellant argues that the admitted statements allowed the jury to improperly link the location where appellant was found by Officer Pitschmann with the location described in the alleged hearsay statements.
Appellant also protests the court's admission of the information Officer Pitschmann received via his police scanner. The officer testified that he heard, over his scanner, communications between the Middleburg Heights Police Dispatcher and a Middleburg Heights officer sending him to the area of I-71 and Pearl Road where a male, wearing a bandana and leather jacket had been found. The court reminded the jury:
 Ladies and gentlemen, this falls into that same category. You'll recall we talked about that. That has to do with admission for limited purpose or in the field of evidence law point of evidence can be admissible for one purpose and not admissible for another purpose. And this is admissible solely for the fact that this was the statement made to this officer, not for the proof of the statement contained therein.
Appellant contends he was prejudiced because these statements were not used for their limited purpose as instructed by the judge. Instead, appellant argues, the description of the suspect was used improperly to suggest that the person who had driven the damaged automobile was the same individual described in the radio transmission.
The above testimony admitted by the trial judge was used for reasons other than to prove the truth of the statements. The description of the suspect and the location where an individual had been found as conveyed to Officer Janowski were not used to demonstrate the veracity of the statements but to explain the officer's actions after receiving the transmissions. Likewise, the information heard by Officer Pitschmann on his police scanner was also necessary to explain his actions.
Generally, statements which are offered to explain a person's conduct are not hearsay. Czarnecki v. Basta (1996). 112 Ohio App.3d 418,424, citing State v. Price (1992), 80 Ohio App.3d 108. The statements complained of by appellant were used to explain the subsequent conduct of Officers Janowski and Pitschmann. Thus, the statements were not hearsay.
Moreover, the repeated cautionary instructions given by the judge reminded the jury that the statements were not to be considered "to prove the truth of the matter asserted." The jury is presumed to have followed the judge's cautionary instruction in the absence of evidence to the contrary. See State v. Aqu-Simmons (Apr. 24, 1997), Cuyahoga App. No. 70035, unreported.
Appellant's second assignment of error is overruled. The decision of the trial court admitting the statements is affirmed.
Appellant's third assignment of error states:
 THE JUDGMENT OF CONVICTION BASED UPON THE VERDICT OF THE JURY IS NOT CONSISTENT WITH AND STANDS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
R.C. 4511.19 prohibits a person from operating a vehicle when that person is "under the influence of alcohol * * *." Appellant contends that the state did not prove, beyond a reasonable doubt, that appellant operated a vehicle while he was under the influence of alcohol.
The Ohio Supreme Court in State v. Thompkins (1997), 78 Ohio St.3d 380,387 quoting Black's Law Dictionary (6 Ed. 1990) 1433, noted that:
 * * * [w]eight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. * * * Weight is not a question of mathematics, but depends on its effect in inducing belief."
(Emphasis in original.)
The Thompkins court approved the test to be applied as set forth in State v. Martin (1983), 20 Ohio App.3d 172:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
The following guidelines, enumerated in State v. Mattison
(1985), 23 Ohio App.3d 10, have been useful when making such a determination:
 1. The reviewing court is not required to accept as true the incredible;
2. Whether the evidence is uncontradicted;
3. Whether a witness was impeached;
4. What was not proved;
5. The certainty of the evidence;
6. The reliability of the evidence;
7. Whether a witness' testimony is self-serving;
 8. Whether the evidence is vague, uncertain, conflicting or fragmentary.
See, e.g., State v. Fincher (1991), 76 Ohio App.3d 721, 728-729. Additionally, both circumstantial and direct evidence possess the same probative value and should be subjected to the same standard of proof. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph one of the syllabus.
In the matter sub judice, appellant was found in a gas station at I-71 and Pearl Road just off of the highway where the damaged vehicle was discovered. Appellant was bleeding from a head wound on the left side of his head. The automobile was damaged on its left side, and blood was found on the driver's side seat, door and frame.
Appellant was carrying a set of keys with blood on them. The keys fit the ignition switch of the damaged automobile. Ms. Diansika testified that the damaged vehicle belonged to her. She had allowed appellant to borrow her vehicle the day prior to the incident, and her automobile had not yet been returned. Appellant was also found carrying cigars that were the same brand as those found on the driver's seat of the vehicle.
Furthermore, Officer Pitschmann testified that appellant smelled strongly of alcohol, his eyes were red and glassy, he stumbled, and his results on the HGN test indicated he was severely impaired.[6]
Upon a review of the record, this court cannot say that the jury clearly lost its way. The jury's verdict of conviction was supported by the evidence. Appellant's third assignment of error is overruled.
Appellant's fourth assignment of error states:
 IT WAS ERROR FOR THE TRIAL COURT TO HAVE DENIED DEFENDANT-APPELLANT'S MOTION IN LIMINE THEREBY ALLOWING THE STATE TO PRESENT TO THE JURY EVIDENCE OF DEFENDANT-APPELLANT'S PRIOR CONVICTIONS WHICH PREJUDICED THE DEFENDANT'S RIGHT TO A FAIR TRIAL.
Appellant's final assignment of error maintains the trial court erred when it overruled appellant's motion in limine, which sought to exclude evidence of appellant's prior convictions.
Appellant was charged with a violation of R.C. 4511.19(A). R.C. 4511.99(A), which establishes the penalties for such a violation, provides that a violation of R.C. 4511.19(A) is a misdemeanor of the first degree except as otherwise provided in divisions (A)(2), (3), or (4). R.C. 4511.99(A)(4)(a) provides that an offender who has been convicted of or pleaded guilty to three or more violations of sections (A) or (B) of R.C. 4511.19, within six years of the offense, is guilty of a felony of the fourth degree.
Where the prior offense enhances only the penalty of an offense, it is not an essential element of the subsequent offense and is strictly a sentencing consideration for the court. State v.Allen (1987), 29 Ohio St.3d 53, 55. However,
 * * * [i]t is well settled that a prior conviction which elevates the degree of a subsequent offense is an essential element of the subsequent offense and may not be bifurcated from the remainder of the elements of the subsequent offense.
Id., citing Allen at 54; State v. Ireson (1991), 72 Ohio App.3d 235,237.
Since appellant's prior convictions elevated the degree of the offense and did not merely enhance the penalty, the evidence of appellant's prior convictions was a necessary element that must have been presented to the jury. Moreover, appellant did not attempt to lessen any potential prejudice by either stipulating to the increased degree of the offense or requesting that the trial judge make that finding.
Appellant's fourth assignment of error is overruled. The trial court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ______________________________ KENNETH A. ROCCO, JUDGE
 ANN DYKE, P.J. CONCURS and ANNE T. KILBANE, J. CONCURS
(See separate Opinion).
[1] "Backwood's" is a brand of cigars which Officer Janowski testified is "very distinct."
[2] Due to his refusal to take the breathalyzer test, pursuant to R.C. 4511.191, appellant received an administrative license suspension.
[3] Although the Lewis court held that a police officer could not make a warrantless arrest for a misdemeanor that was not committed in his presence based on the statements of witnesses to the crime, the observations of the witnesses in the case sub judice was just one factor upon which Off. Pitschmann relied.
[4] Furthermore, appellant had complained that he had been robbed in Strongsville. Therefore, it is reasonable that a Strongsville police officer would be present, responding to his complaint.
[5] Although Officer Janowski testified that the gas station was a Shell station, both Officer Hall and Officer Pitschmann agreed that it had actually been a Sunoco station.
[6] Off. Pitschmann testified that he first read the Miranda
rights to appellant after he placed him in his police cruiser. However, the results of a field sobriety test are not rendered inadmissible where a Miranda violation exists. Henderson, supra at 57.