JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Burk Jordan, Jr., appeals from the judgment of the Cuyahoga County Court of Common Pleas, rendered after a no contest plea, finding him guilty of carrying a concealed weapon and possession of criminal tools and sentencing him to community control sanctions. For the reasons that follow, we affirm.
{¶ 2} On August 2, 2001, the Cuyahoga County Grand Jury indicted appellant on one count of carrying a concealed weapon, in violation of R.C. 2923.12, and one count of possession of criminal tools in violation of R.C. 2923.24. Appellant entered a plea of not guilty and subsequently filed a motion to suppress evidence allegedly obtained as a result of an illegal search and seizure. On November 19, 2001, the trial court held a hearing regarding appellant's motion.
{¶ 3} At the hearing, the State presented the testimony of City of Cleveland police officer Brian Todd. Officer Todd testified that at approximately 12:21 a.m. on July 10, 2001, he and his partner responded to a police radio broadcast that a black male with a gun was soliciting and threatening a female at East 131st and Union Streets. Upon their arrival in the area, the officers were flagged down by an emotionally distraught woman who told the officers that a man in a van had approached her as she was walking down the street and asked her to get in his vehicle to have sex with him. When she refused, he became enraged and told her that he was going to go home, get his gun and then come back and shoot her. The woman told the officers that the man had returned to the area in a different vehicle and was circling around.
{¶ 4} As the woman was speaking to the officers, she saw appellant drive by and told the officers, there he goes right now. According to Todd, the woman stated, He's wearing the same clothes, he just changed his vehicle.
{¶ 5} Todd and his partner followed appellant in their zone car, activated their lights and stopped his car. Todd then approached the stopped car from the passenger side of the vehicle. When he came to the window, he observed a bulge like in the shape of an `L' underneath the floor mat. According to Todd, it looked like basically the shape of a gun. Like if he just threw the mat over it and * * * patted it down and kind of got the shape of the gun. The floor mat, it was old and was real thin.
{¶ 6} Todd's partner immediately pulled appellant from his vehicle and placed him in the rear of the zone car. Todd returned to appellant's car, lifted up the floor mat and retrieved a loaded 9 millimeter handgun. The woman who had flagged down the officers subsequently identified appellant as the man who had threatened her.
{¶ 7} The trial court denied appellant's motion to suppress, ruling that there was probable cause to stop appellant's vehicle and that the search of his car was legal.
{¶ 8} Appellant then plead no contest to the charges. The trial court accepted appellant's plea and found him guilty of both counts.
{¶ 9} On December 18, 2001, the trial court sentenced appellant to six months incarceration on both counts, to be served concurrently.
{¶ 10} On December 20, 2001, the trial court ordered that appellant be released from the county jail on December 23, 2001 and report to the court on January 7, 2002 for instructions regarding community control sanctions.
{¶ 11} On January 7, 2002, the trial court sentenced appellant to community control sanctions upon the conditions that he maintain full-time employment, pay a $5,000 fine, attend the Cuyahoga County Coroner's class on concealed weapons and relinquish ownership of any guns. The court also ordered, without objection by defense counsel, that appellant was not allowed to be driving his car around at night, aimlessly. The trial court informed appellant that if he violated any of the terms of probation, he would be sentenced to eighteen months in prison.
{¶ 12} Appellant timely appealed, raising four assignments of error for our review.
 I.
{¶ 13} In his first assignment of error, appellant contends that the trial court erred in denying his motion to suppress. Specifically, appellant contends that Officer Todd had no basis for the investigatory stop and subsequent search of his car.
{¶ 14} In reviewing a trial court's ruling on a motion to suppress, we accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Retherford (1994),93 Ohio App.3d 586, 592. Then, accepting these facts as true, we must independently determine, as a matter of law and without deference to the trial court's conclusion, whether they meet the applicable legal standard. Id.
{¶ 15} In Terry v. Ohio (1968), 392 U.S. 1, the United States Supreme Court held that a police officer may make a brief, warrantless, investigatory stop of an individual without probable cause to arrest where the officer reasonably suspects that the individual is or has been involved in criminal activity. In assessing that conclusion, the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. State v. Andrews (1991), 57 Ohio St.3d 86, quoting Terry,392 U.S. at 21.
{¶ 16} Whether an investigatory stop is reasonable depends upon the totality of circumstances surrounding the incident. State v. Williams (1990), 51 Ohio St.3d 58, 60. The propriety of an investigatory stop must be assessed in light of the totality of the circumstances as viewed through the eyes of a reasonable police officer who must confront those circumstances on the scene. Andrews, 57 Ohio St.3d at 87-88.
{¶ 17} Appellant contends that Officer Todd did not have a reasonable suspicion that he was engaged in criminal activity and, therefore, had no basis for the investigatory stop of his car. We disagree.
{¶ 18} The evidence adduced at the suppression hearing established that Officer Todd and his partner received a radio broadcast that a male was threatening a woman with a gun. When they responded to the area, they were flagged down by a distraught woman who told the officers that a man in a van had asked her for sex and, when she refused, told her that he was going to go home, get his gun and then return to shoot her. The woman also told the officers that she had seen the man in his car, circling the area. As the woman was talking to the officers, she saw appellant driving by and told the officers, there he goes right now. * * * He's wearing the same clothes, he just changed his vehicle. These specific and articulable facts, taken together, clearly warranted the inference made by the police officers: that appellant was the man who had threatened the woman with a gun. Accordingly, on these facts, the investigatory stop of appellant's vehicle was warranted.
{¶ 19} Appellant contends that the stop was not justified, however, because it was prompted solely by an anonymous tip that was passed to the arresting officers via radio broadcast. In support of his argument, appellant refers us to various cases where an anonymous informant's tip regarding criminal behavior was found insufficient to justify an investigatory stop because it did contain sufficient indicia of reliability. See, e.g., Florida v. J.L. (2000), 529 U.S. 266; State v. Amburgy (1997), 122 Ohio App.3d 277; State v. Smartt (1989),61 Ohio App.3d 137. Appellant's argument, however, ignores the facts of this case.
{¶ 20} The investigatory stop in this case was not prompted solely by an anonymous tip. Rather, the officers heard a radio dispatch and responded to the scene of the crime, where they encountered the victim of the crime. The victim told the officers what had happened and then identified appellant as the perpetrator of the crime when he drove by.
{¶ 21} A tip from an identified citizen informant who is a victim or witnesses a crime is presumed reliable, particularly if the citizen relates his or her basis of knowledge. State v. Jackson (Mar. 5, 1999), 2nd Dist. No. 17226, quoting State v. Gress (June 19, 1998), 2nd Dist. No. 16899. See, also, Maumee v. Weisner (1999), 87 Ohio St.3d 295,299-301. Accordingly, because the information about the crime and its perpetrator came directly from the victim, there was no need for the officers to obtain any other indicia of reliability about the informant or the information conveyed to them prior to stopping appellant.
{¶ 22} Appellant also challenges the warrantless search of his vehicle. Appellant's argument is without merit.
{¶ 23} It has long been the rule that where an initial intrusion by police officers is lawful, an incriminating object that comes into plain view during that intrusion may be seized without a warrant. State v. Waddy (1992), 63 Ohio St.3d 424, 442. Under the plain view doctrine, an officer may seize an item without a warrant if the initial intrusion leading to the item's discovery was lawful and it was immediately apparent that the item was incriminating. Id. The immediately apparent requirement is satisfied when police have probable cause to associate an object with criminal activity. Id.
{¶ 24} We have already determined that the initial investigatory stop of appellant's vehicle was a lawful intrusion. Moreover, Officer Todd testified that it was immediately apparent that the L-shaped bulge under the floor mat of appellant's car was a gun. Accordingly, the seizure of the gun from appellant's car was justified pursuant to the plain view doctrine.
{¶ 25} Moreover, once a law enforcement officer has probable cause to believe that a vehicle contains contraband, he or she may search a validly stopped motor vehicle based upon the well-established automobile exception to the warrant requirement. State v. Moore (2000),90 Ohio St.3d 47, 51. Probable cause has been defined as a reasonable ground for belief of guilt. Id., quoting Carroll v. United States (1925), 267 U.S. 132.
{¶ 26} Here, the victim's report to the officers that a man had threatened her with a gun, coupled with Officer Todd's observation of an L-shape of a gun under the floor mat of appellant's car was probable cause for him to search the car.
{¶ 27} Appellant's first assignment of error is not well-taken and therefore is overruled.
 II.
{¶ 28} In his second assignment of error, appellant contends that the State's failure to produce the alleged victim at the suppression hearing violated his right to confrontation as guaranteed by theSixth Amendment to the United States Constitution. We disagree.
{¶ 29} It is well established that at a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial. Maumee v. Weisner (1999),87 Ohio St.3d 295, 298, quoting United States v. Raddatz (1980),447 U.S. 667, 679.
{¶ 30} Moreover, the United States Supreme Court has repeatedly distinguished between the scope of a defendant's right to confrontation in trial and pretrial proceedings. State v. Williams (1994),97 Ohio App.3d 289, 291, citing Pennsylvania v. Ritchie (1987), 480 U.S. 39,54. The Supreme Court has recognized that the right to confrontation, which includes the right to physically face and cross-examine witnesses, is not a constitutionally compelled rule of pretrial proceedings. Id.
{¶ 31} In a related context, the United States Supreme Court and Ohio courts have consistently rejected the argument that denying a request to disclose the identity of a confidential informant for purposes of a pretrial suppression hearing violates a defendant's Sixth Amendment right to confrontation. See, McCray v. Illinois (1967), 386 U.S. 300; State v. Taylor (1992), 82 Ohio App.3d 434, 446-447; State v. Parsons (1989), 64 Ohio App.3d 63, 66-69. As this court explained in State v. Williams (1994), 97 Ohio App.3d 289, 290:
 {¶ 32} These cases distinguish between the scope of disclosure of a confidential informant's identity at pretrial suppression hearings and at trial because the issue for determination at a suppression hearing in this context is limited to probable cause to issue a search warrant and not defendant's guilt or innocence of the charges. It is well established that hearsay evidence is admissible at suppression hearings and may support the finding of probable cause to issue a search warrant.
{¶ 33} The same reasoning applies to this case. The issue at the suppression hearing was whether Officer Todd had probable cause for the investigatory stop and subsequent search of appellant's car — not appellant's guilt or innocence of the charges. Because the trial court could properly rely on Officer Todd's hearsay testimony to determine this issue, the State had no obligation to produce the witness at the suppression hearing nor was appellant entitled to cross-examine her.
{¶ 34} Appellant's second assignment of error is overruled.
 III.
{¶ 35} In his third assignment of error, appellant asserts that he was denied due process of law and placed twice in jeopardy when the court, after sentencing [him] to six months and after commencing his sentence increased his sentence to eighteen months and a fine.
{¶ 36} Contrary to appellant's argument, the trial court did not sentence him twice. Rather, the trial court's order sentencing appellant to six months incarceration amounted to a residential community control sanction pursuant to R.C. 2929.16(A)(1), as it is apparent from the order that appellant was to serve his sentence in the county jail. Subsequently, at the sentencing hearing on January 7, 2002, the trial court mitigated the residential sanction and placed appellant on community control under a nonresidential sanction. See, e.g., State v. Curtis (2001), 143 Ohio App.3d 314. Appellant objects, however, contending that when the trial court imposed the community control sanctions, it increased his sentence by imposing an eighteen-month term of incarceration, rather than a six-month term. We disagree.
{¶ 37} First, appellant is appealing something that has not yet happened. The trial judge did not sentence appellant to eighteen months in prison; she merely gave him notice that if he violated any of the terms of his community control sanctions, he would be subject to an eighteen-month term of incarceration.
{¶ 38} R.C. 2929.19(B)(5) specifies the notice that must be given to a defendant at a sentencing hearing when community control sanctions are imposed by the court. The emphasis is to ensure that the defendant is fully aware of the possible consequences of violating the terms of the community control sanctions, violating any law, or leaving the state without permission. Curtis, supra at 318 (Painter, J., dissenting). One of the possible consequences contemplated by the statute is imposition of a prison term. At the sentencing hearing, the court shall indicate the specific prison term that may be imposed for the violation, as selected by the court from the range of prison terms for the offense.
{¶ 39} R.C. 2929.15(B) authorizes the court, upon violation, to take any action of which the defendant was notified. If the court elects to impose a prison term, it shall not exceed the prison term specified in the notice provided to the offender at the sentencing hearing pursuant to division (B)(3) of section 2929.19.
{¶ 40} Appellant was found guilty of carrying a concealed weapon, a felony of the fourth degree punishable by a possible term of incarceration of six to eighteen months and a $5000 fine, and possession of criminal tools, a felony of the fifth degree punishable by a possible term of incarceration of six to twelve months and a $2500 fine. Accordingly, the trial judge properly informed appellant at the sentencing hearing that if he violated any of the terms of community control, he would be imprisoned for eighteen months, a sentence within the range of applicable prison terms available for the offenses of which he was found guilty.
{¶ 41} Appellant also objects to the imposition of the $5000 fine, contending that it was an unconstitutional increase to his sentence after he had commenced serving his sentence. As discussed above, however, appellant's initial incarceration was a residential community control sanction imposed by the trial court. The fact that the trial court mitigated the residential sanction with a nonresidential sanction after appellant had served some of the sentence does not somehow make the fine, which was also imposed as part of the community control sanction, unconstitutional.
{¶ 42} Appellant's third assignment of error is overruled.
 IV.
{¶ 43} In his fourth assignment of error, appellant contends that the trial court's order that as a condition of community control, he was not to be driving his car around at night, aimlessly, was an unconstitutional infringement of his right to travel.
{¶ 44} Appellant did not raise this issue in the trial court. Failure to raise the issue in the court below waives the opportunity to raise it here. State v. Lorraine (1993), 66 Ohio St.3d 414; State v. Awan (1986), 22 Ohio St.3d 120, syllabus; State v. Morris (1975),42 Ohio St.2d 307.
{¶ 45} Appellant's fourth assignment of error is therefore overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, J. AND ANN DYKE, J. CONCUR.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).